UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| CHERYL B. O'NEAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No.: 1:07-CV-261 |
| | ) |
| WAL-MART STORES, INC., | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the court on the motion for summary judgment filed by Wal-Mart Stores, Inc. ("Wal-Mart" or "defendant") on September 15, 2008. Docket at 32. Cheryl B. O'Neal ("O'Neal" or "plaintiff") has not filed any response to the motion and so the motion is ripe for resolution.[1] For the reasons discussed below, the motion for summary judgment is GRANTED and this case is DISMISSED.

---

[1] On October 28, 2008, O'Neal filed a belated motion for extension of time in which to file a response to Wal-Mart's motion for summary judgment. Wal-Mart filed a brief in opposition to O'Neal's request. Docket at 35. Magistrate Judge Roger B. Cosbey, to whom this case is on partial referral, held a hearing on the motion for extension of time on November 24, 2008. *See* Docket at 37. During that hearing, plaintiff withdrew her motion for extension of time and Magistrate Judge Cosbey granted the motion. *Id*. Plaintiff's counsel also notified the court at that same hearing that plaintiff wished to dismiss this lawsuit without prejudice. As a result of that representation, Judge Cosbey stayed any further briefing on Wal-Mart's motion for summary judgment and set a briefing schedule for the anticipated motion to dismiss. *Id*. Judge Cosbey directed the plaintiff to file her motion to dismiss by December 1, 2008, and instructed that any response and reply briefs be filed by January 6, 2009. *Id*. Plaintiff never filed that motion to dismiss and, on December 2, 2008, Wal-Mart filed a Notice of Filing Deadline Expiration and Request for Ruling. Docket at 38. In that notice, Wal-Mart noted that plaintiff had failed to file her motion to dismiss (or any other pleading for that matter) by the deadline imposed by Judge Cosbey and asked this court to rule on the motion for summary judgment.

# SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552-53 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Valentine v. Joliet Township High School District No. 204*, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 322 (7th Cir. 1992) (quoting *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir. 1988); *Guenin v. Sendra Corp.*, 700 F. Supp. 973, 974 (N.D. Ind. 1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.), *cert. denied*, 464 U.S. 960 (1983).

In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249-251, 106 S. Ct. at 2511. In the context of employment discrimination cases, "[i]f the employee succeeds in casting doubt on the proffered reasons for dismissal, the ultimate question of whether the employer discriminated against the employee must be left for a jury to consider." *O'Connor v. DePaul University*, 123 F.3d 665, 670 (7th Cir. 1997). Summary judgment is particularly inappropriate for resolving issues involving intent or motivation. *Connor v. Reinhard*, 847 F.2d 384, 393-94 (7th Cir.), *cert. denied*, 488 U.S. 856 (1988).

As stated at the outset, O'Neal has failed to respond to Wal-Mart's motion for summary judgment. Accordingly, the factual assertions on which the motion for summary judgment is based and which are properly supported by the evidentiary record are accepted as true for the purpose of resolving that motion. *Corder v. Lucent Techs., Inc.,* 162 F.3d 924, 927 (7th Cir.

3

1998); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 453 (7th Cir. 1994); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). The Seventh Circuit Court of Appeals has consistently "sustained entry of summary judgment where 'the nonmovant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts.'" *Brasic v. Heinemann's Inc.*, 121 F.3d 281, 286 (7th Cir. 1997) (quoting *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 922 (7th Cir. 1994)). This is the case with this court's Local Rule 56.1(h), of which the plaintiff was notified. This does not alter the standard for assessing a Rule 56(c) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## DISCUSSION

O'Neal initiated this lawsuit by filing her Complaint on October 22, 2007. Docket at 1. In that Complaint, O'Neal asserted a sex discrimination claim against Wal-Mart pursuant to Title VII of the Civil Rights Act of 1964, as amended; she also asserted a retaliation claim against Wal-Mart. *Id*., p. 3.

According to her Complaint, O'Neal was employed at one of Wal-Mart's retail outlets located in Noble County, Indiana. *Id*., p. 1. She alleges that she was discriminated against on the basis of her gender in that Wal-Mart did not offer her the same opportunities or same pay rate that the company offered to similarly situated male employees. *Id*., pp. 2-3. O'Neal also claims that Wal-Mart retaliated against her by interfering with the terms and conditions of her employment after she complained about the alleged disparate treatment. *Id*., pp. 3-4. O'Neal claimed that she performed her duties and responsibilities at Wal-Mart in a manner that was

4

acceptable to the company. *Id*., p. 2. Despite this alleged acceptable performance, O'Neal alleges that she was "not provided similar opportunities for training and promotion opportunities [sic] as those provided to similarly situated male employees." *Id*. O'Neal also claims "she was paid a lower hourly salary than similarly situated male employees." *Id*.[2] Finally, O'Neal asserts that she "complain[ed] about the discrimination to supervisors, but no corrective actions were ever taken." *Id*., p. 3. After she complained, O'Neal states that "Wal-Mart unlawfully retaliated against [her] by giving her verbal and written warnings the reasons for which are mere pretext for unlawful discrimination and retaliation . . . ." *Id*.

Wal-Mart argues that it is entitled to summary judgment on both O'Neal's sex discrimination claim and her retaliation claim, and claims that the uncontroverted evidence it has submitted to the court demonstrates that O'Neal's claims are without merit. Defendant's Brief in Support of its Motion for Summary Judgment ("Defendant's Brief"), generally. As to O'Neal's allegation that she was paid an inferior hourly rate, Wal-Mart notes that "out of more than forty current hourly supervisors at the Wal-Mart store where Plaintiff works, only five are paid at an hourly rate higher than that paid to Plaintiff." *Id*., p. 1. Furthermore, states Wal-Mart, "[o]f those five Associates, four are female." *Id*. Wal-Mart explains that "the only male hourly supervisor whose hourly rate is higher than Plaintiff's has automotive service skills which Plaintiff admittedly does not possess, and his performance reviews have been uniformly better than or equal to those of Plaintiff over the last nineteen years." *Id*., p. 2.

---

[2] O'Neal has not asserted a claim under the Equal Pay Act, 29 U.S.C. § 206(d), and so her allegations about alleged disparate pay are apparently intended as evidence of sex discrimination, as opposed to a separate cause of action.

As to O'Neal's allegation that she was denied opportunities offered to similarly situated male employees, Wal-Mart states that "Plaintiff concedes, however, that this allegation is based upon an April 2005 meeting, during which she was advised against a change of positions which would have been a demotion–a demotion which Plaintiff admits she does not want." *Id*. Furthermore, Wal-Mart notes that "[a]ccording to Plaintiff's own testimony, the alleged comment was made more than 300 days prior to April 13, 2006, the date on which she filed her first Charge of Discrimination against Wal-Mart[.]" and so any claim of discrimination based on this situation "would be time-barred" under Title VII. *Id*.

Wal-Mart readily concedes that O'Neal was "issued a total of one Verbal Coaching and two Written Coachings . . . in 2006 and 2007. Yet, Plaintiff does not dispute the violations of Wal-Mart policy which precipitated two of those Coachings, and the third was withdrawn. In any event, Plaintiff has not suffered any materially adverse employment action because of the Coachings she received." *Id*. Wal-Mart argues that O'Neal bases her retaliation claim on those same Coachings, but notes again that "Plaintiff does not dispute the violations of Wal-Mart policy underlying two of those Coaching, and the third was withdrawn."

Wal-Mart explains that O'Neal was first hired by the company on November 20, 1989, as a cashier at the company's store in Kendallville, Indiana. Defendant's Brief, p. 3. At that time, O'Neal was paid $4.50 per hour and "has received regular raises in conjunction with her performance reviews, as well as merit raises on four occasions." *Id*. Currently, O'Neal is a Department Manager for the store and is paid $15.64 per hour. *Id*. Wal-Mart reiterates that only five similarly situated employees receive a higher hourly rate and that four of those employees are females. The single male employee who is paid a higher wage than O'Neal is paid $19.39

per hour. *Id*., p. 4. However, Wal-Mart points out that this male employee has greater automotive expertise than O'Neal and performs automotive services that O'Neal does not perform. *Id*. Consequently, that male employee received a higher starting hourly salary when he was hired in 1989. *Id*. As a result of these facts, Wal-Mart contends that O'Neal's allegation that she was paid a lower wage than male employees is false and does not support her claim of sex discrimination. In support of these factual assertions, Wal-Mart presents the affidavit of Hatem Ali, who is the Store Manager of the Wal-Mart store where O'Neal works. Defendant's Exhibit A. Ali, who has personal knowledge of the pay issues raised by O'Neal, reviewed the store's pay records and his affidavit testimony fully supports the facts presented by Wal-Mart in its brief.

As to O'Neal's assertion that she was denied promotion opportunities, Wal-Mart argues that O'Neal admitted in her deposition testimony that she was originally mistaken about this issue. *Id*., p. 10. Wal-Mart explains that in April 2005, O'Neal had a conversation with Kevin Salisbury, then a District Manager, and Patrick Trick, the Kendallville Store Manager. During that conversation, O'Neal "asked if she could be moved from her . . . Department Manager position to a . . . Service Technician position." *Id*. (citing Defendant's Exhibit B, Deposition of Cheryl B. O'Neal). Salisbury responded by saying "that's not the right thing to do." *Id*. According to Wal-Mart, "Salisbury made this comment to Plaintiff because he realized that the move would be a demotion." *Id*. (citing Defendant's Exhibit F, Affidavit of Kevin Salisbury, ¶ 4). When asked about this issue during her deposition, O'Neal testified as follows:

> Q.: . . . Is it your belief, sitting here today, that moving from Department Manager of Department 10 into a tech position is a promotion?
>
> A.: No.

7

> Q.: Sitting here today it's not?
>
> A.: No, it's demotion.
>
> Q.: But at the time you filed this complaint, did you believe it was a promotion?
>
> A.: As far as the promotion part, yes. I believed that it was–they were not letting me go to the garage because I was told that that's where the money was. But doing some research on my own, it was not a promotion to go to the garage. It would be demotion.

Defendant's Exhibit B, pp. 7-8.[3] In fact, O'Neal admitted in her deposition that her allegation concerning a denial of promotion opportunities was mistaken and apparently no longer relevant to her lawsuit. O'Neal was asked "as far as you're concerned, [this claim] is no longer applicable to this lawsuit?" to which she responded, "No." *Id*., p. 8.[4]

As stated above, O'Neal bases her claim of retaliation solely on the fact that she was issued verbal and written reprimands after having allegedly complained to supervisors about discriminatory treatment. As also discussed above, Wal-Mart notes that O'Neal admitted in her deposition that the few "Coachings" she received were based on legitimate concerns about

---

[3] The page numbers cited by the court are the page numbers assigned to Defendant's exhibits by the court's electronic docketing system and do not correspond to the page numbers that appear at the bottom of each page of O'Neal's deposition transcript.

[4] O'Neal appeared to backtrack a bit from this admission near the end of her deposition. Despite her admission that she was mistaken about the tech position being a promotion, she nonetheless persisted in her opinion that she was discriminated against when she was told it was not a good idea for her to transfer to a tech position. Her reasoning, apparently, is that she believed tech employees in the garage made more money than she did but she was told that it was not a good idea for her to transfer. In other words, *at the time* of her conversation with Salisbury and Trick, she *believed* the transfer would be to her benefit and did not discover until later that she was mistaken. *See* Defendant's Exhibit B, O'Neal Deposition, pp. 39-41. But O'Neal's admittedly mistaken belief that she was denied a promotion is evidence only of her subjective (and erroneous) belief in April 2005. It is not evidence of discriminatory intent or discriminatory action on the part of Wal-Mart.

breaches of Wal-Mart policies. In support of its position, Wal-Mart submitted the affidavit of Stacy Kunkle, the Assistant Manager who issued O'Neal the Verbal Coaching (Defendant's Exhibit D); and the affidavit of Keith Besand, the Human Resources Manager who met with O'Neal to discuss the Written Coachings she received (Defendant's Exhibit E).[5] Both of these individuals explained in detail the circumstances that resulted in the issuance of these few warnings and why O'Neal received them. *Id.* Kunkle also states in her affidavit that both male and female employees received identical reprimands for the same relatively minor violation of Wal-Mart work rules. *See* Defendant's Exhibit D, ¶ 6.[6] Finally, Wal-Mart notes that O'Neal "suffered no loss of pay or other material harm as a result of the Verbal and Written Coachings of which she complains." Defendant's Brief, p. 10.

Wal-Mart has presented argument, supported by competent evidence submitted without objection, to refute O'Neal's claims of sex discrimination and retaliation. O'Neal, for whatever reason, has chosen not to respond to Wal-Mart's motion for summary judgment or to submit any briefing or evidence in opposition to the motion. Consequently, the arguments and evidence submitted by Wal-Mart are unrebutted. The court concludes that this evidence is clearly sufficient to support Wal-Mart's motion for summary judgment and that the company is entitled to judgment in its favor on all of O'Neal's claims.

---

[5] It was during this meeting with Besand that the written warning O'Neal had received in December 2006 was withdrawn after she had an opportunity to explain her position. Besand stated that once O'Neal explained her position concerning that particular written warning, the warning was withdrawn. Defendant's Exhibit E, ¶ 5.

[6] Kunkle also states in her affidavit that at the time she issued the verbal reprimand to O'Neal, she was unaware that O'Neal had filed a Charge of Discrimination against Wal-Mart. *Id.*, ¶ 7.

## CONCLUSION

For the reasons set forth in this Opinion and Order, the motion for summary judgment filed by defendant Wal-Mart Stores, Inc., is GRANTED and this case is DISMISSED.

Entered: January 26, 2009.

          /s/   William C. Lee
William C. Lee, Judge
United States District Court
Northern District of Indiana